UNITED STATES of America, Plaintiff,

v.

**$87,118.00 AND $3,490.00 IN UNITED STATES CURRENCY,**
Defendants.

No. 93 C 3127.

United States District Court,
N.D. Illinois, E.D.

Jan. 26, 1994.

Jack Donatelli, U.S. Attorney's Office, Chicago, IL, for U.S.

William Thomas Huyck, Chicago, IL, for Abiodun Oloko.

### MEMORANDUM OPINION

GRADY, District Judge.

In this civil forfeiture action brought by the United States ("the Government"), Abiodun Oloko is asserting a claim of ownership to the cash that is the subject of the forfeiture. Before the court is claimant Oloko's motion in limine, which seeks to exclude from this forfeiture action any evidence of state-

ments Oloko made pursuant to a "proffer" agreement with the Government. For the reasons stated in this Opinion, the motion is denied.

## BACKGROUND

Oloko was arrested on February 5, 1992, in connection with a Government investigation into a conspiracy to import heroin into the United States from the Philippines. At the time of his arrest, investigators recovered $87,118 in small bills from a shoe box found in Oloko's apartment. They also recovered $3,490 in small bills from the glove box of Oloko's automobile. These two sums comprise the approximately $90,000 in cash that is the subject of this civil forfeiture action. In May 1992, Oloko told the investigators that from May 1991 to January 1992, he engaged in numerous heroin transactions in which he personally received a total of $77,-000 in cash, mostly in small denominations. Government's Verified Complaint for Forfeiture, Affidavit of Owen J. Putman, ¶ 12. Oloko provided the information pursuant to a proffer agreement, which is at the root of Oloko's motion to exclude from this forfeiture action his statements regarding the $77,000.

In return for Oloko's proffered information, the Government extended a sort of use immunity, promising not to use the information in the proffer against Oloko "in the government's case-in-chief, or in aggravation of [Oloko's] sentence," but reserving the right to make derivative or impeachment use of the information if Oloko were to "testify contrary to the substance of the proffer, or otherwise present a position inconsistent with the proffer." Claimant's Memorandum in Support of Motion in Limine, Exhibit A. Ultimately, Oloko pleaded guilty in the criminal case on June 9, 1992, to a charge of conspiring to import heroin into the United States from the Philippines.

In this related but separate civil forfeiture case, Oloko claims legitimate ownership of the $90,000, which the Government seeks to have forfeited as drug proceeds under 21 U.S.C. § 881(a)(6). Oloko's motion in limine aims to prevent the Government from using, in the forfeiture action, his statements about having received $77,000 in cash related to heroin transactions.

## ANALYSIS

## I. Scope of the Proffer Agreement

■ Oloko essentially asks the court to read the proffer agreement as encompassing not only the criminal proceedings, but this civil forfeiture action as well. In the alternative, Oloko suggests that the proffer agreement was sufficiently ambiguous so that it should be construed against the Government. In any event, he wants the court to enforce the agreement by excluding the proffered information from evidence in the forfeiture. Both Oloko and the Government agree that the proffer agreement's scope should be determined in accord with principles of contract law.

■ Contractual language that lends itself to one reasonable interpretation is not ambiguous and can be construed as a matter of law. *Ooley v. Schwitzer Div. Household Mfg., Inc.,* 961 F.2d 1293, 1298 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992). In the context of plea agreements in criminal cases, courts generally hold the Government to a strict duty to draft the agreements with care. *United States v. Ataya,* 864 F.2d 1324, 1330 (7th Cir.1988). The Government may not rely on courts to salvage a poorly drafted agreement. *United States v. Fields,* 766 F.2d 1161, 1168 (7th Cir.1985).

In this case, however, the court has little difficulty determining that the proffer agreement was not ambiguous and that its promise of use immunity did not extend to a civil forfeiture action that would not be filed for more than a year. The agreement, outlined in a March 16, 1992, letter to Oloko's counsel from Assistant United States Attorney Thomas J. Scorza, made no mention whatsoever of the civil forfeiture proceeding, which at that time did not exist. The Government did not file the civil forfeiture action until May 24, 1993. Scorza's letter referred to Oloko's criminal case by name and number. The fact that Scorza mentioned the case name and number in the last paragraph without placing it atop the letter's text does not render the letter ambiguous.

The letter opened by describing a government investigation of "allegations of criminal wrongdoing involving heroin trafficking" and by asking for Oloko's cooperation in "this matter." Oloko suggests that "this matter" could have encompassed civil forfeiture because the operation of § 881(a)(6) also is related to "allegations of criminal wrongdoing." In the time and context of the agreement, however, civil forfeiture was far removed. Scorza promised not to use the substance of the proffer in the Government's "case-in-chief, or in aggravation of your client's sentence," and he warned that subsequent contrary testimony by Oloko would allow the Government to use the information "at sentencing for any purpose, or at trial for impeachment or in rebuttal testimony." This language does not contemplate a civil forfeiture proceeding and can only be read as pertaining to the Government's criminal case against Oloko. The letter in fact included language to guard against an overly expansive interpretation of the Government's promise:

> No other promise or agreement exists between you or your client and this office regarding the proffer. Specifically, the government intends to proceed in the prosecution of your client, in *United States v. Abiodun Oloko,* No. 92 CR 85, and the government makes no promises to your client, Abiodun Oloko, regarding the dispostion [sic] of the charges against him in that case.

Claimant's Memorandum in Support of Motion in Limine, Exhibit A.

Although the proffer letter in this case sufficiently limited the terms of the agreement, the court notes that the Government could easily avoid the time and expense of added litigation by including in its proffer letters an explicit reference to the possibility of future forfeiture proceedings. While these letters obviously could not refer explicitly to each and every possible subsequent proceeding, civil forfeiture is a common outgrowth of criminal narcotics prosecutions. Certainly prosecutors should know that forfeiture is in the offing when agents seize large amounts of cash from narcotics defendants at the time of arrest. In these sorts of

cases, the court can see no harm in mentioning civil forfeiture as a possibility and specifically providing that the restrictions on use of the proffer are inapplicable to a forfeiture proceeding.

By the same token, defense attorneys have a responsibility to advise their clients of all the reasonably foreseeable adverse consequences of entering into proffer agreements. If counsel believes a proffer letter is ambiguous, he or she ought to seek to clarify the ambiguity before advising the client to enter into the agreement.

In any event, the proffer agreement in this case lends itself to one reasonable interpretation only: The agreement covered the Government's criminal prosecution of Oloko and included no other promises by the Government. Accordingly, the agreement does not provide a basis for excluding the evidence about Oloko having received $77,000 in ill-gotten cash.

## II. Impeachment and Rebuttal

■ The evidence of the $77,000 may tend to rebut Oloko's claim that the $90,000 sought to be forfeited actually was the working capital of his legitimate business. By filing his verified claim of ownership in this forfeiture action, Oloko has taken a position arguably inconsistent with the proffer. (Else, why this motion in limine?) So even if the court were to hold that the proffer covers this forfeiture action, which it does not, the substance of the proffer still would be admissible. *Cf. Michigan v. Harvey,* 494 U.S. 344, 346, 110 S.Ct. 1176, 1178, 108 L.Ed.2d 293 (1990) (holding that defendant's statement, obtained in violation of his Sixth Amendment right to counsel, was admissible for impeachment after defendant gave trial testimony that contradicted the statement); *Oregon v. Hass,* 420 U.S. 714, 722–24, 95 S.Ct. 1215, 1220–21, 43 L.Ed.2d 570 (1975) (holding defendant's *Miranda*-violative statements admissible for impeachment after defendant gave contrary testimony).

## III. Fifth Amendment Implications

■ Oloko has argued that his Fifth Amendment right against self-incrimination would be violated by admitting the proffer

evidence in this action. The Fifth Amendment arguably does extend to civil forfeiture cases in which the forfeiture statute makes the owner's criminal culpability relevant. *See Austin v. United States,* —— U.S. ——, —— n. 4, 113 S.Ct. 2801, 2804 n. 4, 125 L.Ed.2d 488 (1993) (citing *United States v. United States Coin & Currency,* 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971)). But the Fifth Amendment bars only the use of compelled admissions, and Oloko has not argued that his proffered statements were in any way compelled. That distinguishes his case from *United States Coin & Currency,* in which the Fifth Amendment analysis involved federal laws compelling gamblers to register and pay tax on their income. Oloko has suggested that the Government attorneys may have "tricked" him into entering the proffer agreement by remaining silent about their intention to use the substance of the proffer at a future forfeiture proceeding. Claimant's Memorandum in Support of Motion in Limine, at 4–5. But Oloko supports this notion with nothing more than a bare suggestion. The record shows that the proffer letter itself was sent not to Oloko, but to his counsel. The record does not show that Oloko ever invoked his Fifth Amendment right to silence. The court can discern no Fifth Amendment violation, as Oloko made the proffered statements voluntarily and with the advice of counsel.

## CONCLUSION

For the foregoing reasons, the court denies the claimant's motion in limine.